## 9206

### TRAKAS v. SOUTHERN RAILWAY CO.

#### (86 S. E. 492.)

INTERSTATE COMMERCE. BILLS OF LADING. STIPULATION AS TO DAMAGES. PLEADINGS.

1. INTERSTATE COMMERCE — PENALTIES. — The penalties prescribed by Civil Code, sec. 2573, for delay in adjustment of freight claims do not apply to interstate commerce.

2. CARRIERS—BILLS OF LADING—STIPULATION AS TO DAMAGES.—Under a stipulation in a bill of lading limiting damages in case of loss of goods, etc, "to the *bona fide* invoice price, if any, to the consignee, including the freight charges, if prepaid," the freight charges may be included in assessment of damages if paid by the consignee on arrival of goods at destination.

3. PLEADINGS — DAMAGES. — Where damage to shipment of goods is alleged generally, the item of freight paid on the shipment may be shown and considered in assessing damages.

4. CARRIERS OF GOODS—DAMAGES.—Where there was delay in the delivery and acceptance of perishable goods, which were damaged in transit, after their arrival at destination, the carrier not insisting on prompt acceptance by the consignee, the trial Court properly left it to the jury to determine what was the amount of damage caused by the carrier's negligence, with instructions that the carrier was not responsible for the damage which resulted from the delay of the consignee to promptly accept the goods on arrival.

Before DeVORE, J., Spartanburg, October, 1913.   Modified.

Action by N. S. Trakas against Southern Railway Company.   From judgment for plaintiff, defendant appeals. The facts are stated in the opinion.

*Messrs. Sanders & DePass,* for appellant, cite: *As to contract limiting amount of damages in case of loss:* 226 U. S. 491; 35 Sup. Ct. Rep. 351; 84 S. C. 249.   *Duty of consignee to minimize damages by prompt acceptance of goods:* 5 Rich. 462; 7 Rich. 190; 82 S. C. 307; *Ib.* 375.   *New trial:* 68 S. C. 523; 73 S. C. 466.

*Messrs. Carson & Boyd,* for respondent, cite: *Amount and cause of damages questions for jury:* 88 S. C. 312; *Ib.* 360-366. *Duty to carry with reasonable diligence:* 78 S. C. 8-10. *Limitation of damages:* 79 S. C. 344, 347; 16 N. E. 717-719. *Construction of stipulation:* 84 S. C. 249-252; 6 Cyc. 401; 40 L. R. A. 355; 72 N. W. 824.

September 30, 1915.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

We think the judgment of the Circuit Court must be affirmed, except as to so much of it as allows the penalty. The final arbiter of that question has, since the trial on Circuit, outlawed our penal statute in those shipments which move from one State to another; and this is one of that sort.

On other questions the appellant has made ten exceptions.

These we shall not consider by name, the appellant's counsel has not so regarded them; he has argued two questions: (1) a verdict should have been directed for defendant; (2) the defendant should not have been held altogether liable for the damage to the fruit.

The subject matter of dispute is a carload of bananas, which started from New Orleans and Northeastern Railroad, and moved eastward over sundry lines to the terminus at Spartanburg. The car reached the defendant's line at Atlanta, and went thence over them to the terminus.

1. The appellant rests its chief defense upon the contract betwixt the shipper and the carrier expressed in the bill of lading. The contract is in these words:

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment upon this bill of lading, unless a lower value has been represented in writing by the shipper,

or has been agreed upon, or is determined by the classification of tariff upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

It is true that the shipper and the carrier may make a reasonable agreement for compensation to the shipper, in the event of the loss of or damage to the goods by the carrier.

It is true the parties made in the instant case a written contract as to how any possible damages to the bananas should be computed, to wit: the value of the property at the place and time of shipment, being the *bona fide* invoice price to the consignee, including the freight charges if prepaid.

The difference betwixt the parties is the *meaning* of the words of the contract. That is the matter of law to be now determined.

It is agreed that the invoice price of the bananas at New Orleans was $145; that the carrier charged, for carrying the car from New Orleans to Spartanburg, $130, and that the plaintiff paid that at Spartanburg; that the plaintiff sold the bananas for $164.

The naked contention of the carrier is, that the fruiterer, Trakas, must, under the contract, lose the freight charges which he paid, and be content that he has sold in Spartanburg for $164 bananas which cost him $145 in New Orleans. The fruiterer will thus have actually lost $111. A construction which yields such a result ought to be necessary. It is not necessary, nor is it proper.

If the contract must be literally construed, the parties have not by it provided for a contingency where the freight *was not* prepaid, but only for a contingency where the freight *was* prepaid. If that be true, and it plainly is, the case is governed by *Kelly* v. *R. R.*, 84 S. C. 252, 66 S. E. 198, and the freight charges must be added to the invoice price. .

But it is reasonably plain that the parties meant to include the freight charges as part of the damage, in the event of

damage.    The added words, "if prepaid," only mean, if it so happens that the freight charges have been prepaid.    It was taken for granted that if the freight charges had not been prepaid, they would be either remitted, or if exacted at the terminus they would be returned.

It was not intended that the freight charges should be included as part of the damage when paid at the outstart, and not so included when paid at the terminus.    That is not reasonable, and we shall not believe that a public carrier intended to make such a contract with one of its patrons.

There is no force in the appellant's suggestion that the "complaint was not brought to recover money paid as freight, but solely for damages done to the bananas themselves."    The complaint alleged that the plaintiff had been damaged $113 by the defendant's delay in transportation; it did not enumerate the *items* of damage; nor did the defendant demand that of the plaintiff.

Furthermore, the defendant took no such position in the Circuit Court; the only suggestion was that the contract did not warrant a recovery for the freight charges.

2. "The defendant contends * * * that in any event it cannot be held liable under the evidence * * * for the total loss on these bananas."    (Appellant's printed brief.)    It is true the defendant company ought not to pay for such damage as was done to the fruit before the car arrived at Atlanta and was put into the defendant's custody.    The Court so plainly charged the jury.    It is also true that the defendant ought only to respond for the damage which resulted from its acts, and not for that which resulted from the acts of Trakas.    The Court so plainly instructed the jury.    The defendant's view about what agency caused the hurt to the fruit, and the consequent liability and the duty of the parties was fully set out in five requests, all of which the Court allowed.

The appellant's plea here is that the fruiterer ought to have promptly received the bananas and made a claim for damage; that he did not do that, but caviled with the carrier, and his delay in receiving the fruit was the chief agency which worked the damage to it.

That was an issue for the jury, and upon it the law was rightly declared by the Court.

The testimony shows that both parties maneuvered. The company's agent at Washington instructed the company's agent at Spartanburg to "dispose of bananas at best advantage, but (in) this case do not turn over to Trakas." The company did not stand on its right to exact from Trakas a prompt receipt of the fruit, and then to make a claim for damages. It, as well as Trakas, promoted any delay there was. If we had the power we should hesitate to challenge the verdict on such issue.

The judgment of the Circuit Court is reversed, unless the plaintiff shall, within twenty (20) days after notice of filing the remittitur herein in the Circuit Court, remit fifty dollars from the judgment, to wit, the penalty recovered, and, upon his doing so, then the judgment of the Circuit Court is. affirmed.