10495

LIBERTY NATIONAL BANK v. HINES, DIRECTOR GENERAL.

(104 S. E. 313.)

1. CARRIERS—ON TRANSFER OF BILL OF LADING RUNNING TO SHIPPER'S OWN ORDER TITLE PASSES TO TRANSFEREE.—Where a bill of lading is taken by the shipper making the goods deliverable to his own order, with instructions to notify another on arrival at destination and nothing appears to the contrary, the title to the goods remains in the shipper while they are in transit, and passes from him to his transferee of the bill of lading.

2. CARRIERS—OWNER OF GOODS MAY DIVERT THEM IN TRANSIT.—The owner of goods in transit having the right to take actual possession of them at any intermediate point on the route may divert them at any such point while in transit, and it is the duty of the carrier to deliver them to him or divert them according to his orders on presenting evidence of ownership and paying the proper charges.

3. EVIDENCE—PAROL EVIDENCE ADMISSIBLE TO EXPLAIN DIVERSION NOT INDORSED ON BILL OF LADING.—Where a shipper of two carloads of hay consigned them to his own order with directions to notify a third person, and then indorsed the bills to plaintiff's assignor, who ordered a diversion of the goods, which diversion was made but not indorsed on the bills of lading which were returned to him and subsequently assigned to plaintiff, and it appeared that the party to be notified refused to accept the goods which were subsequently sold for charges, it was error to exclude parol evidence in an action against the terminal carrier as for conversion, where there was no showing that such carrier was a party to the original contract.

4. CARRIERS—DELICT MUST APPEAR AS CAUSE OF INJURY BEFORE DAMAGES RECOVERABLE.—Before damages can be recovered as for a conversion of property by a carrier, there must be some evidence from which an inference may be drawn that a delict is the cause of the injury.

5. CARRIERS—ASSIGNEE OF BILL OF LADING HELD UNDER DUTY TO TAKE CHARGE OF SHIPMENT REFUSED.—Where diversion of a shipment of hay was ordered, but not indorsed on the bill of lading, and the hay was not delivered, but sold for charges, the title of the assignee of the bill of lading became absolute on notice that the person to be notified as indicated on the bill refused to pay a draft and take the hay, and it was its duty to pay the freight charges and take the hay, especially if the diversion was not the cause of the refusal, and the carrier was not responsible therefor.

6. CARRIERS—CARRIER NEED NOT GIVE NOTICE TO ASSIGNEE OF REFUSAL TO TAKE GOODS WHERE ASSIGNEE HAD ACTUAL NOTICE.—The assignee of a bill of lading suing for conversion of a shipment of hay diverted according to orders from the assignor of the bill, without indorsement thereon, could not complain that defendant carrier did not give it notice of refusal of the person to be notified to accept the hay where it had notice of that fact from its own agent.

NOTE.—On right of shipper to demand a redelivery of, or to divert the property at an intermediate point, see notes in 15 L. R. A. (N. S.) 756, and L. R. A. 1918b, 79.

Before WHALEY, J., County Court, Richland, July, 1919. Reversed.

Action by the Liberty National Bank of Columbia, as assignee of certain bills of lading, against Walker D. Hines, Director General of Railroads, *et al.* From verdict for plaintiff, the defendant appeals.

*Messrs. Barron, McKay, Frierson & McCants,* for appellant, cite: *Bill of lading is quasi negotiable instrument and an assignment thereof by the owner carries the title to the goods to the transferee:* 93 S. C. 30; 91 S. C. 377. *A bill of lading is a receipt for goods delivered and a contract for their shipment:* 85 S. C. 539. *An indorsement of a bill of lading for value operates to transfer the title of the goods described in it, but not as an assignment of the contract:* 49 N. E. 100; 10 C. J. 202; 11 R. I. 278; 68 S. E. 779, 781; 4 R. C. L. 29; 32 L. R. A. (N. S.) 1173; 105 Am. St. Rep. 341. *Bank's redress is against the assignor:* 10 C. J. 202. *Carrier bound to obey instructions of shipper to divert shipment:* 108 S. C. 166. *Transfer of bill of lading makes transferee the consignee or owner of the goods:* 91 S. C. 377; 95 S. C. 485. *A carrier should comply with consignee's shipping instructions:* 78 S. E. 197. *For he has the right to change the destination or otherwise exercise the rights of ownership:* 134 S. W. 111; 157 S. W. 238; 92 Am. Dec. 142.

*Mr. Edward L. Craig,* for respondent, cites: *Contract is in writing and cannot be varied or contradicted by oral testimony:* 19 L. R. A. 1011; 6 Cyc. 420. *Plaintiff, when it acquired the bills of lading, had the right to rely on the provisions of such bills as they were when offered to it:* 25 S. C. 222. *Carrier which accepted goods to be conveyed to a place, and transports them to another place, is liable for the conversion of the goods and no demand is necessary:* 49

Ohio State 489; 21 L. R. A. 117; 24 Am. St. Rep. 579; 32 N. E. 476. *Conversion is complete when property is taken, not at the time it is sold:* 39 Iowa 14.

October 11, 1920.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Plaintiff recovered judgment against defendant, as Director General of Railroads under Federal control, for the value of two carloads of hay, as for a conversion thereof by defendant in the operation of the Atlantic Coast Line Railroad.

On April 4 and 5, 1918, John Deprey delivered to Grand Trunk Railway System, at Cote St. Paul, Canada, two carloads of hay, consigned to his own order at Maxton, N. C., with directions to notify Glass Brokerage Company at Maxton.

Duprey indorsed the bills of lading to W. C. Bloomingdale, of Montreal, who, on May 1st, sent them to Arthur Hamilton, general freight agent of the Central Railroad of New Jersey, an intermediate carrier in the route, with instructions to have the cars diverted to Sumter, S. C., but without change as to the party to be notified, and with request that the bills of lading be returned to him, with proper indorsements, as soon as possible after the diversion had been effected. Hamilton ordered the diversion on May 3d, and it was effected between that date and May 14th, on which date he telegraphed Bloomingdale that the diversion had been effected, and on May 18th he returned the bills of lading to Bloomingdale, but without noting the diversion thereon.

·On May 27th, in due course of business, plaintiff purchased the bills of lading with the draft thereto attached for the purchase price of the hay, and forwarded them to a bank at Maxton for collection. About ten days later they were returned to plaintiff unpaid. The record does not disclose the report of the Maxton bank to plaintiff, as to what was done toward collecting the draft, or as to why it was not paid.

The cars arrived at Sumter on May 28th, and Glass Brokerage Company was notified, according to the directions of the bills of lading; but they refused to accept the shipment. It does not appear why they refused it. One of defendant's witnesses testified that they made some objection to the charges, but, notwithstanding the charges were adjusted to their satisfaction, they still refused to take the hay; and, as neither Glass Brokerage Company nor the holder of the bills of lading paid the charges and took the hay, it was advertised and sold at public auction, on August 29th, for the freight and demurrage charges, which began to run on June 10th. The net proceeds of sale were insufficient to pay these charges.

On September 11th plaintiff wrote the general freight claim agent of the Atlantic Coast Line Railroad Company, which was the last carrier in the route, and was informed that the hay had been sold. Plaintiff alleged that the diversion was unauthorized, and, therefore, tantamount to a conversion of the hay, for which defendant was liable. Defendant sought to justify the diversion by proof of the facts above stated. But the Court excluded all testimony tending to prove those facts, on the ground that the bills of lading were quasi negotiable instruments, and such testimony was incompetent to vary their provisions, especially those as to the destination, and that no alteration thereof should be valid, unless noted thereon and signed by an agent

of the initial carrier, which had not been done. Therefore a verdict for plaintiff was directed.

Notwithstanding the action is against the Director General of Railroads, since it was the intention to preserve the identity and integrity of the several railway systems under Federal control, and since, therefore, the Director General must be sued for the delicts of his agents in the operation of each carrier in respect to whose management the causes of action arose (*Harmon v. Hines, Director General,* 101 S. E. 925), we shall, for the sake of convenience, speak of the different carriers in the route as if they had been severally operating their own roads.

Where a bill of lading is taken by the shipper making the goods deliverable to his own order, with instructions to notify another on arrival of the goods at destination (as was done in this case), and nothing appears to the contrary, the title to the goods remains in the shipper while they are in transit, and passes from him to his transferee of the bill of lading, which is merely a symbol of the goods. *Bank v. Railway,* 25 S. C. 216; *Greenwood Grocery Co. v. Canadian etc. Co.,* 72 S. C. 450, 52 S. E. 191, 2 L. R. A. (N. S.) 79, 110 Am. St. Rep. 627, 5 Ann. Cas. 261; 4 R. C. L. 32-34; 10 C. J. 201, *et seq.*

The owner of goods in transit has the right to take actual possession of them at any intermediate point in the route; hence he has the right to divert them at any such point while in transit, and it is the duty of the carrier in whose possession they are to deliver them to him or divert them according to his orders, on his presenting evi-dence of his ownership and paying the proper charges 10 C. J. 84, 540, 541.

It follows that Bloomingdale had the right to order the diversion here complained of, and that it was the duty of

the Central Railroad of New Jersey to obey his order to divert the cars. The diversion having been lawfully made, it was the duty of the Atlantic Coast Line to receive the cars and carry them to the destination indicated in the shipping instructions which accompained them. It does not even appear that the Coast Line knew that a diversion had been ordered. But, if it did, it had the right to assume that it had been properly authorized and authenticated. If it had left the hay at Maxton (assuming that the instructions given showed Maxton as the original destination) and plaintiff had been damaged thereby, no doubt plaintiff would have been suing for that damage with little probability of its claim being successfully defended. The fault which caused the plaintiff's damage on account of the diversion, if any, was the failure of the Central of New Jersey to note the diversion on the bills of lading before returning them to Bloomingdale. But there were no facts or circumstances proved upon which the Court would have been warranted in holding the Coast Line responsible for the fault of the Central Railroad of New Jersey. It may be that such an arrangement did exist between the initial and connecting carriers as would make each liable, on the principle of agency, for the fault of any of the others, but there was nothing in the evidence from which such a liability can be inferred. The fact that the initial carrier issued through bills of lading would make it liable for the negligence of its connecting carriers, but that fact alone is not enough to make its connecting carriers liable for the negligence of each other; nor is that fact, together with the receipt and transportation of the goods by the latter, enough, for that duty is imposed on them by law, and, in performing it, each is ordinarily liable only for its own negligence. *Smith v. Railway,* 89 S. C. 415, 71 S. E. 989; *Trakas v. Railway,* 102 S. C. 211, 86 S. E. 492; 10 C. J. 544, *et seq.*

It follows that the principle upon which defendant's evidence was excluded, to wit, that parol evidence is inadmissible to vary a written contract was inapplicable, in the state of the evidence before the Court, since there was nothing to show that the Coast Line was a party to the original contract, or that it made itself a party to it by adopting it, except as it had been modified by the diversion which had been lawfully authorized when the goods were received by the Coast Line.

Besides, there was no testimony tending to prove that the diversion was the cause of any damage to plaintiff, as there was no testimony that Glass Brokerage Company refused the hay, because it had been diverted from Maxton to Sumter. Indeed, for aught that appears, the diversion may have been ordered at their request. Nor is there any testimony that, if the hay had been left at Maxton, the result would have been different. There must be some evidence from which an inference may be drawn that a delict is the cause of injury before damages for it can be recovered.

Again, plaintiff was notified, within ten days after May 28th, that Glass Brokerage Company refused to pay the draft and take the hay. Thereupon plaintiff's title to the hay became absolute, and it was plaintiff's duty to pay the freight charges and take the hay, certainly if the diversion was not the cause of Glass Brokerage Company's refusal to take it, and the Coast Line was not responsible for the diversion. If plaintiff had the right to believe and did believe that the hay was at Maxton, it should have applied there for it; and if it had done so it would have been informed that it was at Sumter. There is no testimony that its being at Sumter put plaintiff in a worse plight than if it had been at Maxton; for aught that

appears, it might have been an advantage. But, instead of offering to pay the freight and take the hay, plaintiff did nothing until September 11th (three months at least after the bills of lading and draft had been returned to it by the Maxton bank) to find out what had become of it, although it knew all that time that Glass Brokerage Company had refused to accept and pay for it. Plaintiff must be presumed to have known that during that time demurrage or storage charges were accruing against it; nor can it be heard to complain that the Coast Line did not give the shipper notice of the refusal of Glass Brokerage Company to take the hay, because plaintiff had notice of that fact from its own agent, the Maxton Bank. 2 Hutchinson on Carriers, 721.

There is nothing in the record to show that the charges were incorrect, or that the hay was not sold in strict accordance with the law. At any rate, there is no complaint about that. The alleged unauthorized diversion is the sole ground of complaint; and, as we have shown, the testimony is not sufficient to hold the Coast Line responsible for that, or to show that it was the cause of any damage to plaintiff. The Court erred in excluding the testimony tending to show that the Coast Line was not responsible for the diversion, and in directing the verdict for plaintiff on the facts proved.

Judgment reversed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES FRASER and GAGE concur.

MR. JUSTICE WATTS dissents.