NELSON GRAIN CO. *v.* ANN ARBOR RAILROAD CO.

1. CARRIERS—BILL OF LADING — EVIDENCE — CONSIGNEE — CONTRACTS.

An original order bill of lading delivered by defendant carrier to the consignor of beans reciting that the property was received from the owners in good order consigned to B. & B. at a designated station, concluding as follows: "B. & B. shippers, A. B. Sell, agent, per B. A.;" indicated conclusively that B. & B. were the shippers and that the shipments were made to their order: being unambiguous, the instrument could not be contradicted by parol evidence showing that plaintiff, a corporation, was the owner and shipper, and the control of the shipment was reserved.

2. SAME—FREIGHT—DELIVERY.

Although the consignees procured the delivery of the shipment by forging a bill of lading, and using the false one instead of the original, which plaintiff forwarded attached to a sight draft, the carrier could not be held for delivering the property on the order of the consignees who were the apparent and presumptive owners, although the original contained a clause as follows, "The surrender of this original order bill of lading, properly indorsed, shall be required before the delivery of the property."

3. SAME—PRESUMPTIONS.

The consignee named in the bill of lading is presumptively the owner of the goods and must be treated by the carrier as the

absolute owner until he has notice to the contrary, so that delivery to him will discharge the carrier. If the owner desires to retain control of the goods he must notify the carrier of such purpose.

4. SAME.

On the face of the receipt, defendant was entitled to presume, if it had any notice of plaintiff's claim to be the owner, that the consideration had been paid and title passed to the consignee named, on delivery to the defendant.

MOORE and BIRD, JJ., dissenting.

Error to Gratiot; Searl, J. Submitted October 16, 1912. (Docket No. 91.) Decided March 20, 1913. Rehearing denied June 2, 1913.

Case by the Nelson Grain Company against the Ann Arbor Railroad Company for the wrongful delivery of goods shipped by plaintiff. Judgment for plaintiff. Defendant brings error. Reversed; new trial refused.

*Alexander L. Smith,* for appellant.

*George P. Stone,* for appellee.

This case was tried by the court without a jury. His findings of fact and law follow:

"Findings of Fact.

"(1) That on the 1st and 6th days of December, 1911, the defendant was and is still a common carrier of goods and engaged in interstate commerce business; and that the plaintiff at the time aforesaid was and still is a duly organized corporation engaged in business at Ithaca, Mich., in buying, selling, and shipping farm produce, and owns and operates an elevator at that place.

"(2) That on the 1st day of December, 1911, the plaintiff was the owner of a car of beans consisting of 250 bags of beans and bargained and sold the same to Botsford & Barrett, commission merchants of Detroit, Mich., to be shipped to Lynchburg, Va., and notify Davidson Bros., there; for which Botsford & Barrett were to pay to the plaintiff the sum of $1,498.75. That the plaintiff, as the owner of said beans, requested the defendant to place a

car at its elevator for the purpose of loading such beans, and the defendant did so, and the plaintiff loaded the same. That after loading the car with such beans the plaintiff, as the owner of such beans, delivered the same to the defendant as such common carrier, to be carried by the defendant and its connecting carriers to Lynchburg, Va. Upon receiving such car of beans of the plaintiff, the defendant executed and delivered to the plaintiff, as the owner of such beans, the order bill of lading that was introduced as evidence in this case and marked 'Exhibit A,' and which order bill of lading is printed on yellow paper.

"(3) That immediately upon receiving such bill of lading the plaintiff made a sight draft on Botsford & Barrett for $1,498.75, the same being Exhibit B in evidence in this case, and attached the same to the bill of lading and caused said bill of lading with such draft attached to be transmitted to a bank in Detroit, Mich., for collection. Said draft was not paid, and has never been paid, or any part thereof, and the same with the original bill of lading attached was returned to the plaintiff and said bill of lading and draft at all times since have been, and now are, in the possession of the plaintiff.

"(4) That on the 6th day of December, 1911, the plaintiff was the owner of another car load of beans consisting of 250 bags of beans and bargained and sold the same to Botsford & Barrett, aforesaid, to be shipped to Paris, Ky., and notify Tower Grocery Company, there; for which beans Botsford & Barrett were to pay the plaintiff the sum of $1,498.75. That the plaintiff, as the owner of said beans, requested the defendant to place a car at plaintiff's elevator for the purpose of loading said beans, and the defendant did so, and the plaintiff loaded the same. That after the loading of the car with such beans, the plaintiff, as the owner of such beans, delivered the same to the defendant as such common carrier to be carried by the defendant and its connecting carriers to Paris, Ky.; and upon receiving such car of beans of the plaintiff, the defendant executed and delivered to the plaintiff as the owner of such beans the order bill of lading that was introduced as evidence in this case and marked 'Exhibit C,' and which order bill of lading is printed on yellow paper.

"(5) That immediately upon receiving such bill of lading the plaintiff made a draft on Botsford & Barrett payable on arrival of car, being 'Exhibit A' herein, for

$1,498.75, and attached the same to the said bill of lading and caused said bill of lading with such draft attached to be transmitted to a bank in Detroit, Mich., for collection. Said draft was not paid and has never been paid, or any part thereof, and the same with the original bill of lading attached was returned to the plaintiff, and said bill of lading and draft at all times since have been and now are in the possession of the plaintiff.

"(6) That said Botsford & Barrett, shortly after said 1st day of December, 1911, prepared or caused to be prepared a false and forged bill of lading purporting to cover said shipment of December 1st, and which is introduced in evidence and marked 'Exhibit E,' and falsely and fraudulently caused the same to be signed in the name of the defendant's agent at Ithaca, Mich., and thereupon said Botsford & Barrett indorsed said false and fraudulent bill of lading in blank, and attached the same to a draft drawn by them upon the party to be notified, as aforesaid, at the destination of said shipment. That the said party upon whom said draft was drawn paid the same, and thus obtained possession of said false and fraudulent bill of lading indorsed, as aforesaid, and surrendered the same to the last of the connecting carriers over whose lines said beans were transported, and thereupon said last connecting carrier, on or about the 10th day of December, 1911, delivered said beans to said party at Lynchburg, Va.

"(7) That said Botsford & Barrett, shortly after said 6th day of December, 1911, prepared or caused to be prepared a false and forged bill of lading purporting to cover said shipment of December 6th, which is introduced in evidence and marked 'Exhibit F,' and falsely and fraudulently caused the same to be signed in the name of the defendant's agent at Ithaca, Mich., and thereupon said Botsford & Barrett indorsed said false and fraudulent bill of lading in blank and attached the same to a draft drawn by them on the party to be notified, as aforesaid, at the destination of said shipment. That said party upon whom said draft was drawn paid the same and thus obtained possession of said false and fraudulent bill of lading indorsed, as aforesaid, and surrendered the same to the last of the connecting carriers, over whose lines said beans were transported, and thereupon said last connecting carrier, on the 16th day of December, 1911, delivered said beans to said party at Paris, Ky.

" (8) The value of each of said car loads of beans, aforesaid, exclusive of freight at the time and place they were so delivered by the last connecting carrier, was $1,498.75.

" (9) The plaintiff has never received from any source anything whatever for either shipment of said beans, and the same has been a total loss to the plaintiff of the full value thereof.

## "Findings of Law.

" (1) The defendant in this case, as the initial carrier, is liable to the plaintiff, as the owner of the goods shipped, in this form of action, for a misdelivery of the goods by the delivering carrier.

" (2) A bill of lading has a dual office; it is both a receipt for the goods shipped, and a contract to carry and deliver them upon the terms specified in it to the designated consignees. As a receipt it is susceptible of explanation by oral extrinsic evidence; and from such evidence in this case I find that the defendant received the goods from the plaintiff, and that the plaintiff is, and was intended by the plaintiff to be, the person designated in the bills of lading by the word 'owners.'

" (3) I find that under the bills of lading executed and delivered by the defendant to the plaintiff it became and was the duty of the defendant and its connecting carriers not to deliver the goods to any person except upon the production and surrender of the original bills of lading properly indorsed, and that good faith and want of negligence on the part of the carrier is not a defense to any action for the misdelivery by the carrier of the goods intrusted to its care.

" (4) I find that the delivery of the beans in question upon the forged bills of lading without requiring the production of the original bills of lading was an unlawful conversion of the goods and rendered the defendant liable in this action to the plaintiff for the value of the same.

" (5) I find that the plaintiff is entitled to a judgment against the defendant for the sum of $2,997.50, together with interest thereon at 5 per cent. since December 13, 1911, that being the average date of delivery for computing interest on the value of both car loads, making a total sum of $3,076.12.

" Judgment is rendered and may be entered in accordance with these findings, and as of this date."

No criticism of the findings of fact is made by defendant except as to the second and fourth findings. As to those, it is the claim of defendant that there was no evidence to support the conclusion that plaintiff, "as the owner of said beans," delivered the same to the defendant or that defendant delivered the bills of lading to plaintiff "as the owner" of the beans. Defendant contends that the only evidence there is shows the contrary, viz., that the defendant received the beans from Botsford & Barrett and issued its bill of lading to Botsford & Barrett as the owners of the beans.

The bill of lading covering the first shipment was as follows:

> Ann Arbor Railroad Company.
> Shipper's No. A—1912.
> Order Bill of Lading—Original.

Received, subject to the classifications and tariffs in effect on the date of issue of this original bill of lading.

At Ithaca, Mich., 12–1, 1911, from owners the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned and destined as indicated below, which said company agrees to carry to its usual place of delivery at said destination, if on its road, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof) and which are agreed to by the shipper and accepted for himself and his assigns.

The surrender of this original order bill of lading, properly indorsed, shall be required before the delivery of the property. Inspection of property covered by this bill of lading will not be permitted unless provided by law or unless permission is indorsed on this original bill of lading or given in writing by the shipper.

The rate of freight from Ithaca, Mich., to Lynchburg, Va., is in cents per 100 lbs.

Consigned to order of Botsford & Barrett.

Destination, Lynchburg, State of Virginia.

Notify Davidson Bros., at same.

Route, H. V. Kanawha Desp. Car initial, M. & G. R. Car No. 561.

| No.<br>Packages. | Description of Articles<br>and Special Marks. | Weight.<br>(Subject to Cor-<br>rection.) |
|---|---|---|
| 250 | Bags Beans<br>Sacks Beans<br>Sacks Feed<br>Sacks Potatoes<br>Bags Clover Seed<br>Bales Bags<br>Car Wheat<br>Car Oats<br>Car Rye<br>Car Hay | 41250 |

                              Ann Arbor R. R., Dec. 1, 1911.
                                   Ithaca, Mich.
(1) BOTSFORD & BARRETT, Shippers.
                              A. B. SELL, Agent, per B. A.

The bill of lading covering the second shipment was
identical with the first, except that the destination was:
"Paris, State of Kentucky. Notify Power Gro. Co., at
same." And the shipper was designated as: "Botsford
& Barrett, Shipper, per Nelson Grain Co." In the case
of both shipments delivery was made to the consignee
named in the bill of lading upon the genuine order of
Botsford & Barrett, indorsed upon forged bills of lading.

BROOKE, J. (*after stating the facts*). The bills of
lading here considered are entirely unambiguous and
show conclusively that Botsford & Barrett were the ship-
pers and that the shipments were made to their order.

The evidence of Mr. Nelson, president and manager of
the plaintiff corporation, does not in our opinion tend to
contradict the bills of lading and (they being unambig-
uous) if it did so tend it would not be admissible under
the authority of *Sturges* v. *Railway Co.*, 166 Mich. 231
(131 N. W. 706).

The learned circuit judge in rendering judgment for
plaintiff seems to have relied upon the case of *Forbes* v.
*Railroad Co.*, 133 Mass. 154. In that case Gallup,
Clark & Co. consigned a shipment of corn to Boston to

their own order.  They sent the bill of lading indorsed
with draft attached for the value of the corn to Foster &
Co. at Boston.  Foster & Co. paid the draft and immedi-
ately indorsed the draft and bill of lading to Forbes for
an advance to the full amount of the draft.  Forbes there-
after held the draft and bill of lading duly indorsed.
Some weeks later the defendant carrier delivered the corn
for export upon the order of Foster & Co.  Foster & Co.
did not produce the bill of lading, but represented that it
was in their possession.  The court held that by the trans-
fer from Foster & Co. Forbes took title as purchaser of
the corn, and could maintain the action, in the absence of
laches, upon proving conversion by defendant.  It was
further held:

"It is settled that any misdelivery of property by a car-
rier or warehouseman to a person unauthorized by the
owner or person to whom the carrier or warehouseman is
bound by his contract to deliver it is of itself a conversion,
which renders the bailee liable in an action of tort in the
nature of trover, without regard to the question of his due
care or negligence.  *Hall* v. *Railroad Corporation*, 14
Allen [Mass.], 439 [92 Am. Dec. 783]."

We are unable to see the applicability of the *Forbes
Case* to the case at bar.  Here there is no innocent holder
for full value of a properly indorsed bill of lading, the
failure to demand production of which led the carrier to
make delivery of the consignment to one not entitled to
receive it.  Here the delivery was made to the consignees
named in the bills of lading and upon the order of the
shipper exactly as, by the terms of the written instrument,
the carrier was instructed.  The learned circuit judge
says:

"What was done by Botsford & Barrett and the plain-
tiff amounted to an assignment of the bill of lading to the
plaintiff.  Even if it be conceded that Botsford & Barrett
were the owners mentioned in the bill of lading, yet they
had the right to assign the bill of lading to the plaintiff,
and had they been present at Ithaca, and made the ship-
ment personally, and then made a regular assignment to

the plaintiff, no one would contend that the railroad would be protected in making delivery upon the order of Botsford & Barrett, even though it was a genuine order, unless it was accompanied by the original bill of lading."

Touching these views it is sufficient to say that Botsford & Barrett were *not*, so far as the record discloses, present in Ithaca, that they did *not* make the shipment personally, and that they did *not* make any formal assignment of the bill of lading to the plaintiff. The conclusion, that what was done between Botsford & Barrett and plaintiff amounted to an assignment of the bill of lading to the plaintiff, is, we think, wholly unwarranted by the disclosed facts. The record contains no hint that the defendant knew or had cause to believe that the plaintiff had retained any interest or right of property in the beans. The bill of lading indicated the contrary. An examination of that paper shows that the plaintiff was an utter stranger to the transaction, except that as to the last bill its name appears beneath that of Botsford & Barrett, Shipper, with the prefix "per." This can have but one meaning, viz., that the beans were shipped by Botsford & Barrett; the plaintiff acting for them in the transaction. Assuming that defendant knew of plaintiff's ownership of the beans prior to the moment of delivery, the terms of the bill of lading would indicate a sale to Botsford & Barrett and an intent to vest them with the title and right of possession thereto.

The bills of lading here in question contained the following language:

"The surrender of this original bill of lading, properly indorsed, shall be required before the delivery of the property."

It being conceded by defendant that delivery of the beans was made without the surrender of the original bill of lading, it becomes pertinent to inquire what effect these words have upon the controversy.

Hutchinson on Carriers (3d Ed.), vol. 1, § 177, in his text, says:

"The carrier takes the risk of a delivery to the person entitled to the goods by the bill of lading and its indorsements. The consignee named in the bill of lading is presumptively the owner of the goods and must be treated by the carrier as the absolute owner until he has had notice to the contrary; and a delivery to him without such notice will discharge the carrier. Thus, if the consignor would for any reason retain the ownership or control of the goods, he must notify the carrier of such fact; for otherwise the presumption that the consignee named is the rightful owner and entitled to their possession will prevail as against any undisclosed intention which the consignor may have had to the contrary."

At section 181, vol. 1, the same author says:

"But while the carrier takes the risk of making delivery to the person entitled to the goods by the bill of lading and its indorsements, and should, therefore, be careful to require the person demanding the goods, when such person is another than the consignee, to produce the bill of lading properly indorsed, he will fully discharge his duty in making a delivery without requiring the bill of lading to be presented if delivery is made to the person who is lawfully entitled to the goods. The right of the carrier to demand the presentation of the bill of lading is a precaution of which he may avail himself, for the purpose of avoiding delivery to the wrong person, but which, if he sees fit, he may dispense with; and if delivery is made to the person vested with the right to receive the goods, the carrier will have performed his duty. If therefore the consignee should direct the carrier to make delivery to a third person to whom he has transferred title, and delivery is made in accordance with such directions without requiring the bill of lading to be produced, the failure of the carrier to require its production will place him under no responsibility to a bona fide holder who, after such delivery, has taken the bill of lading from the consignee. And although a bill of lading providing for a delivery to the consignor or his order contains an express provision that the carrier shall require its surrender or production before making a delivery of the goods, such requirement, it is said, will be considered as having been inserted for the benefit of the carrier, and, as between himself and the consignor, cannot subject the carrier to liability for failing to require the production of the bill of lading on making

delivery to one to whom the consignor has ordered that the goods shall be delivered."

An examination of the authorities cited by the writer will show that the text is amply supported.

In 4 Elliott on Railroads (2d Ed.), § 1523, it is said:

"The rule in regard to the person to whom delivery must be made is very strict. It must be made to the right person, and it seems that neither the fraud nor imposition of any one else nor mistake on the part of the carrier will excuse it from liability, if it delivers the goods to the wrong person. The right person is, ordinarily, the consignee or his authorized agent. But if the carrier delivers to any one, even to the consignee, without the production of the bill of lading, it runs the risk of having to show a delivery in accordance with the terms thereof, and, where a vendor ships goods and takes a bill of lading in his own name or to his order, the carrier cannot safely deliver the goods to any one else unless the bill is indorsed or transferred by him and produced by the person to whom they are delivered."

Further, in a note to section 1524, the author says:

"That a carrier may be protected in a proper case even if it does not require production of the bill of lading, if it shows it delivered to the right party, see (citing many cases)."

The case of *Chicago Packing, etc., Co.* v. *Railway Co.*, 103 Ga. 140 (29 S. E. 698, 40 L. R. A. 367), is instructive. The bills of lading in that case contained the same provision that the goods should not be delivered without surrender thereof. They were indorsed and signed by the plaintiff as follows: "Deliver to Hobbs & Tucker, or order, for collection." Tucker ordered delivery to one Ragan in the following terms:

"E. N. CLARK, Agent: Let N. L. Ragan have car meat on dray track, and I will be responsible for B—L. May 18, 1893.    A. W. TUCKER."

The carrier made delivery to Ragan relying upon this order without the surrender of the original bill of lading. The shipper thereupon sued the carrier for damages caused by a wrongful delivery. The court said:

"If a natural person consigned goods to his own order under a bill of lading which provided that it should be surrendered before delivery could be made, and called in person upon the carrier's agent at the point of destination, demanded a delivery of the goods, and thereupon received the same, it certainly could not be questioned that, as between him and the carrier, such delivery would be good, and would free the carrier from further liability to him, although the bill of lading may not have been produced and surrendered in accordance with the stipulations therein contained.  While in such a case the carrier might not, as against one who had in good faith and in the due course of business obtained the bill of lading properly indorsed, be protected by a delivery to the original consignor, surely the latter would have no cause of complaint against the carrier.  If such a consignor could thus obtain a delivery of the goods to himself in person, what difference, in principle, would it make if, instead of doing this, he, by a written order, directed delivery to another, who obtained the goods upon such order without producing and surrendering the bill of lading.  In either case, looking at the transaction with reference only to the consignor and the carrier, the latter would have done all that the former had any right to require of it.  In other words, the stipulation in such a bill of lading requiring its surrender upon delivery of the goods is for the benefit of the carrier, and not that of the consignor."

See, also, *Gates* v. *Railroad Co.*, 42 Neb. 379 (60 N. W. 583); *Nebraska Meal Mills* v. *Railway Co.*, 64 Ark. 169 (41 S. W. 810, 38 L. R. A. 358, 62 Am. St. Rep. 183); 6 Cyc. p. 472, and cases cited in note 49.

Whether the stipulation in the bill of lading that surrender thereof shall be required before delivery is considered to be for the benefit of the carrier or the shipper would seem in this case to make no difference, for the plaintiff was not the shipper.  Being the owner of the property at the time of delivery to the carrier, plaintiff chose to represent by the contract negotiated with the carrier that Botsford & Barrett were the shippers thereof, to whose order delivery should be made, at the same time neglecting to disclose to the carrier that it (the plaintiff) desired or intended to retain any control over the ship-

ment for its own protection. Defendant had no knowledge or notice of plaintiff's secret intention. For aught defendant knew, Botsford & Barrett might have paid plaintiff before the shipment was made. Indeed, the terms of the bill of lading negotiated by plaintiff plainly indicated that such was the fact. We cannot escape the conclusion that this loss has come to plaintiff (if a loss there be through the financial inability of Botsford & Barrett) by reason of its own carelessness in failing to make the shipments to its own order, or in some other manner notifying the defendant that it desired to retain its title to the shipments until paid for the same. Having made delivery of the shipments to the parties named in the bills of lading upon the order of Botsford & Barrett as directed in the bills, we think the defendant should be held to have performed its full duty in the premises.

Defendant requested the court to make findings of law as follows:

"Under the evidence in this case, when defendant received the beans in controversy and issued its bills of lading therefor, and the same were accepted by plaintiff, the beans became (as between the plaintiff and defendant) the property of Botsford & Barrett, and the plaintiff cannot complain of a delivery of the same by the defendant or its connecting carrier to or on the order of Botsford & Barrett.

"The fact that the original bills of lading were not surrendered to the delivering carrier at the time of the delivery of the beans will not make the defendant liable, for the reason that the beans were delivered on the order of Botsford & Barrett and the evidence does not show any notice to defendant that the title to the beans was not to pass to Botsford & Barrett, or that the same were not to be delivered on their order."

These findings should have been made.

The judgment is reversed, and there will be no new trial.

STEERE, C. J., and McALVAY, KUHN, OSTRANDER, and STONE, JJ., concurred with BROOKE, J.

MOORE, J. (*dissenting*). I cannot agree with the conclusion reached by Justice BROOKE. I do not agree with him that the bill of lading is unambiguous and states the ownership of the property described therein. It is true that it says it was received from the owners, but it nowhere states who the owners were at that time, and I think the record justifies the second and fourth findings of fact made by the circuit judge.

I reach the conclusion from this record that the plaintiff was the owner of the beans in question, and sold them to Botsford & Barrett, and consented the beans might be consigned to them, and shipped over the road of the defendant, but insisted that the original order bill of lading must be produced, properly indorsed, before the defendant was authorized to deliver the property.

The defendant contracted to require the surrender of the order bill of lading properly indorsed before it would deliver the beans. This it did not do. Before the consignees could get the original order bill of lading, they would have to either pay the plaintiff or make some arrangement which would be satisfactory to it. By making the contract in question the plaintiff had a right to suppose that defendant would not deliver the property until the conditions named in the contract had been performed. The defendant having violated its contract in this regard, I think it was liable to the plaintiff for the injury done to it by this violation.

It follows from what I have stated that I think the judgment of the court below should be affirmed.

BIRD, J., concurred with MOORE, J.