WALKER D. HINES, DIRECTOR-GENERAL OF RAILROADS, v. SAM. R. SCOTT.

No. 3628.   Decided February 28, 1923.

(248 S. W., 663.)

Shipper and Carrier—Sale by Sample—Inspection by Purchaser—Delivery—Conversion—Damages.

A dealer in New Mexico shipped by rail a carload of apples which his agent had sold by sample to a dealer in Texas, with draft on latter attached to the bill of lading to shipper's order, indorsed by him and sent to a bank with direction to notify purchaser. Surrender of the bill of lading was required before delivery to purchaser, and it also provided that "inspection will not be permitted unless provided by law" or by permission in writing by the shipper or indorsed on bill. The car was placed by the carrier on the purchaser's private unloading track, and being opened by him, he refused, on inspection of the apples, to receive them, this opportunity for inspection being customary in his dealing with the carrier. Being thus refused, they were, by the shipper's direction, turned over to his local agent and sold at a loss from the agreed price. *Held*:

(1) The conduct of the carrier in permitting inspection of the shipment by the purchaser before he paid the draft and presented the bill of lading was not wrongful nor unauthorized. The bill did not represent the contract between shipper and purchaser; and a purchaser of goods by sample has by law a right to inspect them before accepting them under the contract. (pp. 510-512).

(2) The bill of lading, by its terms, was not a limitation on the purchaser's right of inspection, but impliedly admitted it. Moreover, such stipulation, being considered as inserted for the protection of the carrier, could be waived by him. (p. 511).

(3) Through the inspections were deemed unauthorized, no damages proximately resulting therefrom were shown. No injury to the shipment was caused by the inspection. Permitting it could not be treated as a conversion by the carrier as by misdelivery. If rejection by the purchaser was justified the shipper was not entitled to damages; if unjustified he was not deprived by the inspection and rejection of his right to recover from the purchaser the agreed price. (pp. 512-515).

(4) Permitting the inspection was not such a breach of the carrier's contract with the shipper as entitled the latter to recover, at least, nominal damages. (p. 516).

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

The Supreme Court referred the questions to the Commission of Appeals, Section A, for their opinion thereon, and here adopts same as its answer. The opinions rendered in the Court of Civil Appeals are printed in — S. W., —.

*Terry, Cavin & Mills,* and *Sanford & Harris,* for appellant.

Where goods are sold by sample, the purchaser, under the law in this state, has the right of inspection; and the evidence showing that these apples were sold by sample, the consignee, as a matter of law, had the right to inspect the car load of apples before taking up the bill of lading, and his action in inspecting the same comes within the provision of the bill of lading permitting inspection where same is allowed by law. Pontiac Shoe Mfg. Co. v. Hamilton, 44 S. W., 405; Hume v. Cotton Oil Mill, 65 S. W., 390; Model Mill Co. v. Railway Co. 188 S. W., 936; Hutchison on Carriers, 3 Ed., 733, 23 R. C. L., 1432; McLane v. Swernemann & Schkade, 189 S. W., 282; Mueller v. Simon, 183 S. W., 63; Thick v. Railway Co., 101 N. W., 64; Plumb v. Bridge, 113 N. Y. Supp., 92; Sloan v. Carolina Central Ry. Co., 36 S. E., 21; Hunter Bros. v. Stanley, 111 S. W., 869; Burkenroad Goldsmith Co. v. Railway Co., 70 So., 44; 6 Cyc., 465; 10 C. J., 253, Sec. 353.

An authorized inspection of property shipped by a common carrier in sealed cars, at the point of destination, in consequence of which inspection the contents of the car was refused, does not amount to a wrongful delivery by the carrier so as to make the carrier liable for the value of the property or for any loss sustained by reason of the property not being up to the sample. Dudley v. Railway Co., 3 L. R. A. (N. S.), 1135; 52 S. E., 718; Model Mill Co. v. Railway Co., 188 S. W., 936.

Before defendant in error could recover by reason of the inspection, he would be required to allege and prove, loss, damage or injury to the *apples.* This he does not do. Earnest v. Delaware, L. & W. Ry. Co., 134 N. Y. Supp., 323; Bernie Mill & Gin Co. v. St. L. S. W. Ry. Co., 228 S. W., 847; Herrick v. Gallagher, 60 Barb., 566.

*Alva Bryan,* and *Witt, Terrell & Witt,* for appellee.

Where a carrier wrongfully delivers freight at its destination and the shipper suffers damages as a result thereof, the measure of damages is the difference between the amount received for the freight, in this case, car of apples, and the market value of the apples at place of delivery. Northern Pac. R. Co. v. Commercial Natl. Bank, 123 U. S., 727; Hutchinson on Carriers, sec. 68; Railway Co. v. Adams, 49 Texas, 758; Bank v. Railway Co., 79 S. W., 1094.

Mr. Judge GERMAN delivered the opinion of the Commission of Appeals, Section A.

Appellee Sam R. Scott filed this suit in the county court of McLennan County, Texas, against Walker D. Hines, Director General of Railroads, Agent, for damages for wrongful delivery of a carload of apples shipped by him from Roswell, New Mexico, to Waco, Texas, about August 22, 1919. Judgment was rendered in his favor for $185.00 with 6 per cent interest from August 27, 1919, making a total judgment of $191.78. Appeal was taken to the Court of Civil Appeals for the Third Supreme Judicial District, and that court reversed and rendered the judgment in favor of appellant Walker D. Hines, Agent; but dissenting opinion was filed by Associate Justice Jenkins. On motion for rehearing the cause was certified to the Supreme Court upon the questions hereinafter set out.

The findings of fact made by the trial court and the Court of Civil Appeals show that in August, 1919, the appellee contracted with Turner-Coffield Company of Waco, Texas, to sell them a carload of merchantable apples f. o. b. Roswell, New Mexico, at $2.00 per box. No shipping instructions were given, but seller was directed by purchaser to endorse the bill of lading, draw a draft for the amount of purchase, attach same to the bill of lading, and send same to some bank in Waco. The sale of the apples was made by Walter Reese of Waco, Texas, acting for the seller, and the sale was made by sample. August 22, 1919, the carload of apples was delivered by appellee to Walker D. Hines, Agent, at Roswell, New Mexico, the car containing 628 boxes of apples. A regular order form bill of lading was issued and delivered to appellee, showing that the shipment was consigned to the order of Sam R. Scott, Waco, Texas, notify Turner-Coffield Company at Waco. The bill of lading contained the following provision:

"The surrender of this bill of lading properly endorsed shall be required before the delivery of the property. Inspection of property covered by this bill of lading will not be permitted unless provided by law or unless permission is endorsed on this original bill of lading or given in writing by the shipper."

The bill of lading was endorsed by appellee, who drew a draft for the sum of $1256.00 on Turner-Coffield Company, which was at-

tached to the bill of lading, and the same was sent in due course of business to the First State Bank and Trust Company of Waco, Texas, and the bank was advised to notify Turner-Coffield Company.

About August 27, 1919, the carload of apples arrived at Waco and was by the railway company placed on a private siding which was used by Turner-Coffield Company for loading and unloading shipments. On the morning of August 28th, Turner-Coffield Company, having been advised of the arrival of the car, broke the seals and opened the car, removing several boxes of the apples, which were examined and inspected by them, and the boxes were replaced in the car, the door closed, and the shipment was refused by them. At the time of breaking the seals and inspecting the apples, Turner-Coffield Company had not paid the draft, and had not obtained the bill of lading, and did not present same to the appellant.

At the time of the transaction referred to and for many years prior thereto Turner-Coffield Company was and had been engaged in the wholesale business, receiving and sending out shipments of merchandise in carload lots. For a long time it had been their uniform custom on the arrival of merchandise in carload lots to open the cars and inspect the contents before presenting bill of lading, and before paying draft, and if same was found satisfactory to then pay the draft, obtain bill of lading and deliver same to the carrier; and if the contents were not satisfactory, they would decline the shipment, refuse to pay the draft, and turn the shipment back into the hands of the shipper or the transportation company. This custom and practice of the Turner-Coffield Company was known to appellant, its agents and representatives, at the time, and had been acquiesced in for some time prior to this particular transaction. However, the appellant and its agents and servants had no knowledge of the action of the Turner-Coffield Company in entering the car and inspecting the contents in this particular instance until after same had been accomplished. The original bill of lading was not presented to the appellant, and there was no endorsement on the bill of lading nor written permission given Turner-Coffield Company or anyone else to enter the car and inspect the apples before producing the bill of lading. At the time of the transaction the bill of lading was in the possession of the First State Bank and Trust Company of Waco, where it could have been obtained by paying the draft attached. The Turner-Coffield Company in opening said car and inspecting the contents acted in accordance with the custom previously adopted, which custom was known to and acquiesced in by appellant.

The reasonable market value of the carload of apples at Roswell, New Mexico, on August 27th, 1919, was $1256.00, and the reasonable market value of same at Waco at that date was $1256.00, plus the cost of transportation.

After the refusal of the shipment by Turner-Coffield Company, upon order from the appellee, the appellant delivered the car of apples to Walter Reese, who handled and disposed of them at the request of the appellee; such instructions being given by appellee without prejudice to any cause of action he may have had against the appellant for wrongful delivery, or conversion, of the shipment. Reese realized from the sale of the apples the sum of $1167.25, and paid therefrom the following items of expense: freight, $185.00, storage, $52.00, demurrage, $8.24, commission on sales, $92.00; and the sum of $830.01 was paid to appellee. Reese could have sold the apples in the car at the time at $2.00 per box, but he put them in storage and sold them out in lots.

The damages claimed by appellee in his petition was the difference between $1256.00, the value of the apples at Roswell, New Mexico, and the sum of $830.01 which he actually received. The trial court, it seems, allowed him judgment only for the item of $185.00 paid as freight, with 6 per cent interest on same to the date of judgment.

The questions certified by the Honorable Court of Civil Appeals are as follows:

1. Was the conduct of the carrier in permitting inspection by the buyer at the destination either wrongful or unauthorized?

2. Did the bill of lading, by its terms, authorize the carrier to permit inspection?

3. If the inspection was unauthorized, did the facts pleaded and proved by appellee show damages which were the proximate result of the acts of the carrier, and recoverable by appellee?

4. Was such a breach of contract shown in permitting the inspection as would authorize the recovery of at least nominal damages?

We will consider questions 1 and 2 together, as they are in effect the same.

A bill of lading does not stand for or represent the contract between the buyer and the seller, but is a receipt given by the carrier for the goods, coupled with an agreement for their carriage according to the terms expressed in the bill. As between the purchaser and the seller, the right of inspection is ordinarily dependent upon or governed by the terms of their contract, and not by the provisions of the bill of lading, unless the bill has special provisions relating thereto.

The Court of Civil Appeals finds that "it is undisputed that the sale in this case was by sample, the agent negotiating the sale having exhibited apples as a sample and as the basis for the sale." It is well settled that in contracts of sale of this kind the purchaser has the right of inspection of the goods before consummating the contract, and this right is not abridged by the seller shipping the goods in his own name with draft attached to the bill of lading. Pontiac Shoe Mfg. Co. v. Hamilton, 18 Texas Civ. App., 283, 44 S. W., 405;

Keeler v. Paulus Mfg. Co., 43 Texas Civ. App., 555; 96 S. W.; 1097;
Mueller v. Simon, 183 S. W., 63; McLane v. Swernemann & Sch-
kade, 189 S. W., 282; Pope v. Allis, 115 U. S., 363, 29 Law. Ed. 393,
and note. In such cases if the seller refuses to give the buyer a rea-
sonable opportunity for inspection or the carrier refuses such op-
portunity, the purchaser has a right to reject the shipment. Fore v.
Plant Seed Co., (Mo. App.), 232 S. W., 169, and cases there cited.

But it is urged that the following provision in the bill of lading was
a limitation upon the right of the purchaser to inspect the shipment
of apples about which the controversy herein arose:

"The surrender of this bill of lading properly endorsed shall be
required before the delivery of the property. Inspection of property
covered by this bill of lading will not be permitted unless provided
by law or unless permission is endorsed on this original bill of lad-
ing or given in writing by the shipper."

As above stated, the right of Turner-Coffield Company to inspect
the apples was incidental to and a part of their contract with the
appellee, and it is our opinion that the stipulation above referred to
placed no limitation thereon.

The provision above quoted is a part of the uniform order bill of
lading promulgated by the Interstate Commerce Commission June
22, 1908. It was adopted under an agreement between the shippers
and transportation companies, having for its purpose a compliance
with the provisions of the Carmack Act. The Carmack Act contained
no provision prohibiting inspection of property at the point of des-
tination. Where the rights of a shipper and purchaser are not reg-
ulated by their contract the right of the buyer to inspect exists.
Hutchinson on Carriers (3rd Ed.), Sec. 733; Elliott on Railroads
(3rd Ed.) Sec. 2299. The uniform order bill of lading was not in-
tended to extend liability beyond the scope of the Carmack amend-
ment; consequently it has been held that the provision referred to
in bills of lading placed no restriction on the right of the parties to
contract with reference to inspection, and the right of the purchaser,
in cases of sale by sample, to inspect at destination was left unim-
paired. Earnest v. Railway Co., 149 App. Div. (N. Y.), 330, 134
N. Y. Supp., 333. Besides, such stipulations in a bill of lading will
be considered as having been inserted for the protection of the car-
rier and may be waived by it. Famous Mfg. Co., v. Railway Co.,
166 Iowa, 361, 147 N. W., 756; Nelson Grain Co., v. Railway Co.,
174 Mich., 80, 140 N. W., 486. Both of these cases have received the
approval of the Supreme Court of the United States in Pere Mar-
quette Ry. Co., v. French, 254 U. S., 538, 65 Law Ed., 391.

The effect then of such provision in a bill of lading is this: The
right of the purchaser to an inspection under his contract with the
seller is the same as it would be without such provision in the bill
of lading. It is, however, a part of the contract of carriage. The

carrier does not become liable by reason of such stipulation for conversion if it permits the shipment to be inspected by the purchaser. If such inspection results in loss, damage, or injury to the property, the carrier may be made to pay for such loss, damage, or injury.

Turner-Coffield Company having a right under their contract of purchase to inspect the apples when they arrived at Waco and to determine whether or not their contract of purchase had been complied with, it follows, as between them and the appellee, the conduct of the carrier in permitting the inspection was neither wrongful nor unauthorized. The carrier had a right to waive the stipulations, subject to liability, as above set out, and if it did so, the bill of lading contained no restriction against an inspection, and therefore implied'ᵞ authorized same to be made.

We therefore answer the first question, no, and the second question, yes.

The third and fourth questions will be considered together as they are closely related.

This being an interstate shipment the rights and liabilities of the parties depend upon acts of Congress, the bill of lading, and common law rules as accepted and applied in the Federal tribunals. Railway v. Rankin, 241 U. S., 319, 60 Law Ed., 1022, L. R. A., 1917A, 265.

Appellee's cause of action is based solely upon the theory that the appellant in permitting an inspection of the apples was guilty of conversion, as having made delivery of the shipment to a party not authorized to receive the same, contrary to the terms of the bill of lading.

The federal courts have not directly passed upon the question as to whether or not the act of the carrier in permitting an inspection of the goods, as was done in this instance, amounts to an unauthorized delivery or conversion. But the courts of various states have passed directly upon this question, and so far as we are able to find the decisions are unanimous. In addition, the Court of Civil Appeals at Texarkana has passed upon the question, in a case however where inspection was expressly allowed by the bill of lading. As we have concluded that the bill of lading in the present case impliedly authorized the inspection and same was provided for in the contract between the buyer and seller, the opinion in the case by the Texarkana court becomes applicable to this case. We have reference to the case of Pittman-Harrison Co., v. Fox Bros., 228 S. W., 579.

The decisions are in accord in holding that the conduct of the carrier in permitting the consignee or the party who is to be notified under an order bill of lading to enter a car and inspect the contents does not constitute a delivery of the shipment or a conversion of the property. Bernie Mill & Gin Co., v. Railway Co., 228 S. W., (Mo. App.), 847; Model Mill Co., v. Railway Co., 136 Tenn., 211, 188 S.

W., 936; Dudley v. Railway Co., 58 W. Va., 604, 3 L. R. A. (N. S.), 1135, 112 Am. St., 1027, 52 S. E., 718; Sloan v. Railway Co., 126 N. C., 487, 36 S. E. 21; Earnest v. Railway Co., (N. Y.), supra; Yuille-Miller Co., v. Railway Co., 164 Mich., 58, 128 N. W., 1099; Berger-Crittenden Co., v. Railway Co., 159 Wis., 256, 150 N. W., 501; Elliott on Railroads (3rd Ed.), Sec. 2299.

A brief reference to some of these cases will be justified.

In Earnest v. Railway Co., supra, plaintiff delivered to the carrier a carload of apples at Bath, N. Y., consigned to the order of the First National Bank of Wayland, N. Y., and destined for Chicago. Bill of lading containing the provision above quoted was delivered to plaintiff and he attached same to a draft drawn by him on Train, Letterman & Ford of Chicago, and this draft was sent to a bank for collection. When the car arrived at Chicago, Train, Letterman & Ford sent their employees to the yard and with the consent of the carrier inspected about 16 barrels of the apples. After the inspection the apples were placed back into the car, the same was resealed, and the shipment refused. The plaintiff sued the railway company for conversion. After discussing the provisions of the bill of lading. considered in connection with the Carmack Act, the court used this language:

"In the present case the evidence undisputably establishes that the carrier at the point of destination permitted an inspection of the apples, and hence the defendent, in pursuance of the Carmack Act, must respond for whatever loss resulted to the plaintiff by the breaking of the agreement. The extent of the loss or injury the plaintiff must prove. There is no claim that the apples were injured by the inspection, or that the refusal of the Chicago firm to accept the apples, which they were not legally bound to purchase, was by reason of this inspection. There is not the slightest proof of any loss or damage or injury to the fruit. On the contrary, the proof shows that they were not injured at all by the inspection. The railroad company retained the actual possession of the property. Its dominion over it was not surrendered, and the plaintiff was promptly notified by Train, Letterman & Ford that they did not wish the apples, and plaintiff refused to receive them from the railroad company. It knew that possession of the apples was not to be given to the Chicago firm until it had honored the draft upon it. The railroad company did violate its agreement, and the measure of liability for that breach was the loss or injury to the apples."

The case of Dudley v. Railroad Co., supra, also involved a shipment of apples. They were in barrels, consigned to the shipper, and were taken from the car and placed on the wagon of one Sharp, who had been notified of their arrival in compliance with instructions of the shipper. After being inspected, they were replaced in the car from which they had been taken, and Sharp refused to accept the

shipment. Sharp did not produce the bill of lading, or show any right to the possession of them. The railroad company permitting the inspection was sued in conversion. The Court of Appeals of West Virginia in commenting on the inspection and the effect of it, used this language:

"Sharp's agent was simply permitted to enter the cars, set barrels out in his wagon, open them, and examine the apples. Then they were put back in the car and it was resealed by the agent. It may be true that he had no right to do so, and that the defendant did wrong in permitting the inspection, no evidence of title or right to possession having been shown, but it is a non sequitur to say, upon these facts, there was delivery. It may have been an unauthorized act of dominion over the property; but whose act was it? Clearly that of the railroad company, for the property was still in its actual and legal custody. It never parted with the possession. Not every wrongful act on the part of a common carrier authorizes an action against it for a conversion. Where goods entrusted to a common carrier are injured only, the owner's remedy is for damages for the injury, not their value. What is the nature of the plaintiff's injury here? Inspection did not injure the property, so far as disclosed. It prevented the consummation of a sale to Sharp. Can that constitute the basis of an action for the value of the property? That it could not is so obvious that no such claim is made, and this branch of the contention is founded upon the extremely fanciful theory of a technical delivery, for which no authority has been found."

In Sloan v. Railway Co., supra, plaintiff had a contract with certain mills for the purchase of cotton, and took a bill of lading therefor from the railway company "to order, notify S. B. Tanner, Treasurer," who was treasurer of the mills. Draft was drawn on the treasurer and attached to bill of lading. The railway company permitted the mills to examine the cotton without production of the bill of lading, in consequence whereof they refused to accept the cotton and pay the draft. Suit was for conversion of the cotton. The petition was held demurrable, the court holding that the request to "notify" conferred on the mills as full right to inspect the cotton as if it had been the consignee; and further held that if the cotton was wrongfully rejected, plaintiff's cause of action was against the mills and not the railway company.

The other cases make similar holdings, and as the recent case of Bernie Mill & Gin Co. v. Railway Co., cited above, gives a full review of other decisions, we deem it necessary to only make reference thereto.

As to what damages are recoverable in cases where the carrier breaches some provision of the contract of carriage, and same does not constitute a wrongful delivery, the authorities are definite and

certain. Being an interstate shipment the acts of Congress and decisions of the federal courts control. Art. 8604a U. S. Compiled Statutes expressly limits liability of the carrier in cases not amounting to conversion to *loss, damage* or *injury caused by it*. No provision of the Interstate Commerce Act makes the carrier liable for merely permitting inspection contrary to the terms of the bill of lading, unless loss, damage or injury results to the property therefrom. The statute thus having limited liability to loss, damage or injury caused by the carrier it excludes other liability. See Adams Express Co. v. Croninger, 226 U. S. 505, 57 Law Ed., 314, 44 L. R. A. (N. S.), 257, and Clemons Produce Co., v. R. R. Co., 203 Mo. App., 100, 219 S. W., 660.

The same principle is announced in the recent case of Pere Marquette Ry. Co. v. French by the Supreme Court of the United States, 254 U. S., 538, 65 Law Ed., 391, where it is held that a failure of the railroad company to require a surrender of the bill of lading even in case of wrongful delivery and conversion, will not subject the carrier to liability, unless loss to the property is suffered as a result of the failure to take up the bill.

Under the authorities cited it is not sufficient to show a cause of action against the carrier merely to show that the purchaser declined the shipment as a consequence of the inspection. In the present case there is no allegation or proof that the apples would have been accepted if the inspection had been refused. To constitute a cause of action against the carrier it was necessary for appellee to show that there was loss, damage or injury to the apples, which was the result of the inspection made by Turner-Coffield Company. The proof shows nothing of the kind. If the shipment was wrongfully rejected appellee had a cause of action against Turner-Coffield Company. If it was rightfully rejected, there was no cause of action. The act of appellant had nothing to do with making the rejection either justified or wrongful.

We answer the third and fourth questions no.

### By the Supreme Court.

The opinion of the Commission of Appeals answering certified questions adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton*, Chief Justice.