14109

WOODRUFF OIL & FERTILIZER CO. v. CHARLESTON & W. C. RAILWAY CO. *ET AL.*

(180 S. E., 793)

*Messrs. Nicholls, Wyche & Russell,* for appellant,

*Mr. J. B. Atkinson,* for appellant,

Mr. *W. M. Swink,* for respondent,

July 17, 1935.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This was an action for alleged damages brought against appellants jointly arising out of a shipment of cotton seed meal by respondent, to order of respondent, from Woodruff, S. C., to Brevard, N. C., over the railroads of appellants, the Charleston & Western Carolina Railway Company being the initial carrier, and Southern Railway Company, the connecting and terminal carrier. The contract of carriage contained an order notify clause to W. S. Ashworth & Sons of Brevard, N. C., and provided that the shipment was to be and was on the uniform bill of lading prescribed by the Interstate Commerce Commission and contained the following provision: "That surrender of this original Order Bill of Lading properly indorsed shall be required before the delivery of the property. Inspection of property covered by this bill of lading will not be permitted unless provided by law or unless permission is indorsed on this original bill of lading or given in writing by the shipper."

Due to error on the part of the initial carrier, this shipment was billed "straight" without the words "order notify W. S. Ashworth & Sons," and was delivered to them at their

side track, without the production and delviery of bill of lading and without any indorsement of inspection thereon. W. S. Ashworth & Sons, after inspecting the meal, refused to accept the shipment because the grade was not what they had bought, and upon so notifying respondent, it received back from W. S. Ashworth & Sons and the delivering carrier the shipment of meal, and reconsigned it to Asheville, N. C., where the shipment was sold, including freight charges, etc., at a loss of $63.85.

Action was instituted in a magistrate's Court for Spartanburg County, on complaint setting out the above facts. The Charleston & Western Carolina Railway Company demurred to the complaint on the ground "that the same does not state facts sufficient to constitute a cause of action, in that the complaint nowhere alleges that the shipment of meal was in any way damaged by permitting its inspection; whereas, the clear inference from the complaint is that the only damage claimed is that the consignee turned down the shipment as not being up to warranty, and that the price of meal having declined they had to resell it at a loss."

The Southern Railway Company answered admitting that the meal was negligently shipped straight instead of order notify bill of lading; alleged that as connecting carrier it had no notice of the contract of shipper with the initial carrier, and therefore under the bill of lading delivered to it, had the right to allow an inspection; and further answered that even if an unauthorized inspection of the goods was allowed by it, that this was an interstate shipment and was controlled by the laws of the United States of America, and more particularly known as the Carmack Amendment to the Act to regulate commerce, wherein by said Act its liability in connection with said shipment is limited in cases not amounting to conversion, to loss, damage, or injury to said shipment caused by it; and further answered that no allegation of any loss, damage, or injury to the said shipment was alleged in the complaint.

The Magistrate overruled the demurrer of Charleston & Western Carolina Railway Company, but upon notice of appeal from his order, did not proceed further as against this defendant. As to Southern Railway Company, the case proceeded, and judgment was rendered against it for the full amount demanded in the complaint. This defendant also appealed, and the appeals were argued before the County Judge for Spartanburg County. In a short order the Magistrate was sustained in both of his rulings. Thereupon, an appeal was taken to this Court.

In *Chicago, etc., Railway Co. v. C. C. Whitnack Produce Co.*, 258 U. S., 369, 42 S. Ct., 328, 329, 66 L. Ed., 665, Mr. Justice McReynolds, speaking for the Court, had this to say: "It is established doctrine that the rights and liabilities in respect of damage to goods moving in interstate commerce under through bills of lading depend upon Acts of Congress, agreements between the parties and common-law principles accepted and enforced in the federal courts."

The case at bar is governed by the Carmack Amendment (49 U. S. C. A., § 20), inasmuch as it is conceded by all parties concerned to be an interstate shipment. What is the liability imposed upon the carrier, if there has been no conversion? It is a liability to any holder of the bill of lading which the primary carrier is required to issue for any loss, damage, or injury to such property caused by it or by any connecting carrier to whom the goods are delivered. Applying the statute to the case at hand, has there been any loss, damage, or injury to the shipment, and if so, was the property damaged as a result of the inspection?

The respondent did not claim in its complaint or upon a trial of the case that there was any loss, injury, or damage to its property, but, on the contrary, that the effect of the inspection allowed by the appellants was to prevent a consummation of the sale to W. S. Ashworth & Sons.

Does it constitute conversion for a carrier to permit an inspection by consignee contrary to the provisions of the bill of lading?

The case of *Dudley v. Chicago, Milwaukee & St. Paul Railway Co.,* 58 W. Va., 604, 52 S. E., 718, 719, 3 L. R. A. (N. S.), 1135, 112 Am. St. Rep., 1027, involved a shipment of apples. They were in barrels, consigned to the shippèr, with directions to notify one J. W. Sharp, of Chicago, Ill., of their arrival at destination. Sharp's agent, without producing bill of lading or otherwise showing title or right of possession to the apples, was allowed to inspect them. This agent reported that the apples were not such as the plaintiff had agreed to deliver, and the shipment was refused. The railroad company finally disposed of the shipment and tendered the shipper the net proceeds. The shipper refused to accept this, and brought suit for the full value of the apples, or, that is, for the amount he expected to receive from Sharp, on the theory that the conduct of the railroad company amounted in law to a conversion of the apples to its own use. In passing upon this, the Court had this to say: "The argument to sustain this position treats the inspection allowed to Sharp's agent as an unauthorized delivery of the property to him. That a common carrier is liable for a wrongful delivery, if in any way at fault, is perfectly clear. Such act may be treated as a conversion. Common carriers are bound to exercise the highest degree of care in this respect. 'No circumstances of fraud, imposition, or mistake will excuse the common carrier from responsibility for a delivery to the wrong person.' Hutchinson on Carriers, § 344. To the same general effect, see *North Pennsylvania R. R. Co. v. Commercial Nat. Bank,* 123 U. S., 727, 8 S. Ct., 266, 31 L. Ed., 287, and *Indianapolis, etc., R. R. Co. v. Herndon,* 81 Ill., 143, cited by counsel for appellant. Of course, this general rule, like all others, may be subject to some slight apparent exceptions, which need not be noticed here. But, if there was no delivery, the rule of

law relied upon has no application. The property was never out of the possession of the defendant until sold, or removed for sale, some time after the inspection. Sharp's agent was simply permitted to enter the cars, set barrels out in his wagon, open them, and examine the apples. Then they were put back in the car and it was resealed by the agent. It may be true that he had no right to do so, and that the defendant did wrong in permitting the inspection, no evidence of title or right to possession having been shown; but it is a *non sequitur* to say, upon these facts, there was a delivery. It may have been an unauthorized act of dominion over the property, but whose act was it? Clearly that of the railroad company, for the property was still in its actual and legal custody. It never parted with its possession. Not every wrongful act on the part of a common carrier authorizes an action against it as for a conversion. Where goods intrusted to a common carrier are injured only, the owner's remedy is for damages for the injury, not their value. Hutch. Com. Car., § 770a. For delay in delivery the action must be for damages resulting, not the value of the property. Hutch. Com. Car., § 328; *Ryland & Rankin v. Chesapeake, etc., Ry. Co.,* 55 W. Va., 181, 46 S. E., 923. What is the nature of the plaintiff's injury here? Inspection did not injure the property, so far as disclosed. It prevented the consummation of a sale to Sharp. Can that constitute the basis of an action for the value of the property? That it could not is so obvious that no such claim is made, and this branch of the contention is founded upon the extremely fanciful theory of a technical delivery, for which no authority has been found."

In *Hines v. Scott,* 112 Tex., 506, 248 S. W., 663, 665, the Court had before it, for consideration, a case almost identical to the case at hand. The shipper, in that case, had consigned "order notify" a carload of apples, and there was a restriction in the bill of lading expressly prohibiting the carrier to permit an inspection of the apples by the purchaser or consignee. However, in that case, as in the case which we

now have before us for decision, the carrier did allow the purchaser to inspect the apples, in breach of the provision relative to inspection. In the *Hines case,* in denial of the shippers' cause of action against the carrier, the language of the Court, which we quote with approbation, was as follows:

"Appellee's cause of action is based solely upon the theory that the appellant, in permitting an inspection of the apples, was guilty of conversion, as having made delivery of the shipment to a party not authorized to receive the same, contrary to the terms of the bill of lading. The federal courts have not directly passed upon the question as to whether or not the act of the carrier in permitting an inspection of the goods, as was done in this instance, amounts to an unauthorized delivery or conversion; but the courts of various states have passed directly upon this question, and, so far as we are able to find, the decisions are unanimous. * * *

"The decisions are in accord in holding that the conduct of the carrier in permitting the consignee or the party who is to be notified under an order bill of lading to enter a car and inspect the contents does not constitute a delivery of the shipment or a conversion of the property."

According to the law of this State, it is necessary, in order to recover for conversion of property against a carrier that a delict is the cause of the injury. Now, what was the cause of the loss here? Was it caused by the inspection of the shipment, or was it the result of nonacceptance of the meal by the consignee? The testimony of the respondent absolutely fails to establish that the shipment was injured by the inspection, but, on the contrary, establishes that its loss (not loss to the property), was due to the refusal of the consignee to accept same. The testimony adduced specifically shows that respondent's cause of action, if it has one, which will depend upon whether or not the meal was rightfully rejected, is against the consignee, W. S. Ashworth & Sons. See *Liberty Nat. Bank v. Hines,* 115 S. C., 82, 104 S. E., 313.

Having reached the conclusion that respondents' complaint did not state a cause of action, and that judgment should not have been rendered against Southern Railway Company, appellant, it is unnecessary to decide the question of waiver by respondent, raised by this appeal.

Therefore, it is the judgment of this Court, that the order of the County Judge sustaining the order of the Magistrate overruling the demurrer of Charleston & Western Carolina Railroad Company, and affirming the judgment against Southern Railway Company, be, and is hereby, reversed. Let judgment be entered in favor of defendants-appellants.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and FISHBURNE concur.