IOWA BEEF PACKERS, INC., Plaintiff-Appellant,

v.

CHICAGO GREAT WESTERN RAILWAY CO. and New York Central Railroad Co., Defendants-Appellees.

No. 16720.

United States Court of Appeals
Seventh Circuit.

Oct. 29, 1968.

P. L. Nymann, Dakota City, Neb., Eugene D. Anderson, Chicago, Ill., for plaintiff-appellant.

Richard O. Olson, Alvin E. Domash, Robert W. Coster, Chicago, Ill., for de-

fendants-appellees Penn Central Company, successor in interest to The New York Central Railroad Co.

Edmund J. Kenny, Richard J. Brennan, Chicago, Ill., Winston, Strawn, Smith & Patterson, Chicago, Ill., for defendants-appellees Chicago Great Western Railway Co.

Before KILEY, CUMMINGS and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This is an action by a shipper to recover against the carriers under Title 49 U.S.C. § 20(11) for the loss resulting from a failure to require surrender of the bills of lading. The district court without a jury, found for defendants and plaintiff appeals.

On or about December 3, 1963, plaintiff Iowa Beef Packers, Inc. (Iowa) agreed to ship three carloads "choice steers * * * thin skinned butcher-type cattle * * *" to White House Beef Company (White House) (which is not a party to this action) in New York City. The first carload was shipped under order bill of lading and was properly paid for prior to delivery. of the meat to White House. White House claimed that the shipment did not conform to the specifications and notified Iowa. On December 10, 1963, Iowa delivered the other two carloads, #7419 and #7007, to the co-defendant, Chicago Great Western Railway Co., and received two order bills of lading which were forwarded with sight drafts to Bankers Trust Company in New York City. The order bills stated that "the surrender of the original Order Bill of Lading, properly endorsed, shall be required before the delivery of the property" and that there is no right of inspection prior to surrender.

In passage from Iowa to New York, the cars were transferred to the co-defendant, New York Central Railroad Co. (NYC). On December 12, 1963, the sight drafts with accompanying order bills of lading were in the hands of Bankers Trust Company. On December 13 and 16, 1963, the NYC delivered carloads #7007 and #7419, respectively, to

White House without surrender of the order bills of lading. In taking delivery of both shipments, White House certified that the bills of lading were unavailable and supplied the NYC with a blanket indemnity bond as required under Uniform Freight Classification 6, Section 3.

White House found both shipments unsatisfactory. On December 20, 1963, White House paid the sight draft for shipment #7419 and surrendered the order bill of lading to the NYC. On December 24, 1963, White House filed suit in the Supreme Court of New York for damages for breach of contract as to all three shipments and sought issuance of a writ of attachment. An Order of Attachment was issued on December 26, 1963, and on December 30, 1963, when White House paid the sight draft for shipment #7007, the sheriff levied on $2,500 of the funds paid. Iowa settled with White House for $750 and filed suit against Chicago Great Western under Section 20(11) of the Interstate Commerce Act for $750 plus legal fees incurred.

It is plaintiff-appellant's contention that the defendants had a duty to deliver the goods only in return for a bill of lading except under the situation provided in Uniform Freight Classification 6, Section 3, where the bills of lading were not available, and since defendant breached that duty in this case, it is liable under Section 20(11) of the Interstate Commerce Act, 49 U.S.C. § 20(11) (1964).

Section 20(11) of the Interstate Commerce Act, also referred to as the Carmack Amendment, was adopted in 1906 in order to insure that a party could recover fully for damages that resulted from transporting the merchandise. Adams Express Co. v. Croninger, 226 U.S. 491, 503–506, 33 S.Ct. 148, 57 L.Ed. 314 (1913). Prior to the amendment, a party had to collect separately from each of the carriers involved. Instead, Section 20(11) provides:

That any common carrier, railroad, or transportation company subject to

the provisions of this part receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; and any such common carrier, railroad, or transportation company so receiving property for transportation from a point in one State, Territory, or the District of Columbia to a point in another State or Territory, or from a point in a State or Territory to a point in the District of Columbia, or from any point in the United States to a point in an adjacent foreign country, or for transportation wholly within a Territory, or any common carrier, railroad, or transportation company delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover therein, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading * * *.

The Supreme Court in interpreting "any loss, damage or injury to such property caused by any * * * railroad" said in New York P. & N. R. Co. v. Peninsula Produce Exchange, 240 U.S. 34, 38, 36 S.Ct. 230, 233, 60 L.Ed. 511 (1916), that these words "* * * are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." In that case recovery was allowed for a loss resulting from a delay in shipment caused by a connecting carrier.

██ Under § 20(11) a carrier upon issuance of an order bill of lading does not assume a risk of liability for all possible losses from a failure to demand surrender of the bill of lading. Uniform Bills of Lading found their origin in Section 20(11) of the Interstate Commerce Act. The first purpose was to insure the adoption of "a uniform rule and to relieve * * * contracts from the diverse regulation to which they had been theretofore subject." Adams Express Co. v. Croninger, supra, 226 U.S. at 506, 33 S.Ct. at 152.

[T]he liability imposed upon the carrier * * * is a liability to any holder of the bill of lading which the primary carrier is required to issue "for any loss, damage or injury to such property caused by it," or by any connecting carrier to whom the goods are delivered. The suggestion that an absolute liability exists for every loss, damage or injury, from any and every cause, would be to make such a carrier an absolute insurer and liable for unavoidable loss or damage though due to uncontrollable forces. That this was the intent of Congress is not conceivable. To give such emphasis to the words, "any loss or damage," would be to ignore the qualifying words, "caused by it." The liability thus imposed is limited to "any loss, injury or damage caused by it or a succeeding carrier to whom the property may be delivered," and plainly implies a liability for some default in its common

law duty as a common carrier. Id. 506–507, 33 S.Ct. 152.

The carriers in this case violated no common law duty by delivering the merchandise prior to surrender of the bill of lading.

■ Iowa argues that the loss was caused by the carrier's grant of a right of inspection prior to surrender of the order bill of lading in violation of one of the provisions of the Uniform Bill of Lading. However, the provision in the Uniform Bill of Lading which does not permit inspection without the written consent of the shipper was adopted for the benefit of the carriers and can be waived by them at any time. Hines v. Scott, 112 Tex. 506, 248 S.W. 663, 665 (1923); O. A. Sutton Corp. v. McMaken Transfer Co., 171 Kan. 485, 233 P.2d 717, 719–720, 25 A.L.R.2d 1379 (1951). Pere Marquette Railway Co. v. J. F. French & Co., 254 U.S. 538, 546, 41 S. Ct. 195, 199, 65 L.Ed. 391 (1921) held:

Under § 8 [of the Uniform Bill of Lading Act, 49 U.S.C. § 88 (1964)] the carrier is not obliged to make delivery except upon production and surrender of the bill of lading; but it is not prohibited from doing so. If instead of insisting upon the production and surrender of the bill it chooses to deliver in reliance upon the assurance that the deliveree has it, so far as the duty to the shipper is concerned, the only risk it runs is that the person who says that he has the bill may not have it. If such proves to be the case the carrier is liable for conversion and must, of course, indemnify the shipper for any loss which results. Such liability arises not from the statute but from the obligation which the carrier assumes under the bill of lading.

■ The liability of the carrier to any holder of an order bill of lading elevates an order bill of lading to the status of a negotiable document. The provision in the bill of lading requiring its surrender protects the carrier from further liability on the negotiable instrument. The carrier may waive this right as long as it protects the character

of the order bill of lading as a negotiable instrument. Since § 20(11) makes the carrier liable to the holder of the bill of lading, an order bill of lading's standing as a negotiable instrument is not undermined. Babbitt v. Grand Trunk Western Railway, 285 Ill. 267, 274, 120 N.E. 803, 805–806 (1918).

■ Uniform Freight Classification 6, Section 3 provides:

Surrender of original order bill of lading, properly endorsed, is required before delivery of the property therein described, but such property may be delivered in advance of surrender of the bill of lading to, or as directed by, a party who states * * * to the carrier in writing (or orally if promptly confirmed in writing) that he is the owner or is lawfully entitled to the possession of the property and that the bill of lading has been lost, delayed, destroyed or otherwise is not immediately available at a bank or other source, or states * * * in writing that if and when a shipment is delivered to him, or as directed by him, he will be at that time either the owner or lawfully entitled to the possession of the property, and who presents to the carrier as a substitute for the bill of lading, security in the form of * * * A blanket bond of indemnity with surety; * * *

Its first purpose is to protect the carrier from loss as a result of delays in transportation because of the use of bills of lading. Under Section 3 a consignee of a shipment of perishable goods can receive the goods without delay. The second purpose is to protect the carrier in this limited situation from possible subsequent holders of the bills of lading. However, contrary to plaintiff's contention, by complying with Uniform Freight Classification 6, Section 3, the railroad does not assume any other risks.

■ Among some of the liabilities created by Section 20(11) are the liabilities for misdelivery of the goods or non-payment of the draft accompanying the bill of lading. Here, White House

stated under Uniform Freight Classification 6, Section 3, that the bills of lading were not available and gave an indemnity bond. Neither misdelivery nor non-payment is involved herein. Therefore, Iowa does not have a cause of action under Section 20(11) of the Interstate Commerce Act.

Affirmed.