O’NIELL, C. J.
 

 This is a suit to recover from a carrier the invoice price of a carload shipment, on an order bill of lading, on the allegation that the shipment was delivered by the carrier to the party to be notified without surrender of the hill of lading. Answering the suit, the defendant denied that the shipment was delivered, and averred that it was abandoned by the shipper and was sold by the carrier for the charges against it, leaving a balance of $2,156.99 due on the charges, for which the defendant asked for judgment as plaintiff in reconvention. There was judgment for defendant rejecting plaintiff’s demand and allowing defendant on the reeonventional demand $1,883.19, from which judgment the plaintiff has appealed.
 

 While the suit was pending in the civil district court, the defendant, Walker D. Hines, was succeeded in office by James O. Davis, as Director General of Railroads and Agent, and the judgment was rendered in his favor. Thereafter, James C. Davis was succeeded by Andrew W. Mellon, as Director General of Railroads and Agent, and he has appeared and become the party defendant and appellee.
 

 Here are the facts of the case: On the 15th of May, 1918, the Morley Cypress Company shipped from Morley, La., via the Texas & Pacific Railway, to Reform, Ala., on the Mobile & Ohio Railroad a carload of secondhand steel rails, consigned to the shipper’s order, with the instruction to notify the Lathrop Lumber Company. The rails had been sold -by the Morley Company to the Lathrop Company, and a sight draft for the price, $2,081.22, was drawn on the Lathrop Company and attached to the bill of lading and sent to the Birmingham Trust & Savings Bank for collection. The so-called “order bill of lading” contained this usual stipulation, viz.:
 

 “The surrender of this original bill of lading properly indorsed shall be required before the delivery of the property. Inspection of the property covered by this bill of lading will not be permitted unless provided by law, or unless permission is indorsed on this original bill of lading or given in writing by the shipper.”
 

 The shipment was made in a gondola car, and arrived at Reform, Ala., on the 22d of
 
 *679
 
 May, 1918. The Lathrop Company’s mill was about a mile from Reform station, and within the switching iimits of Reform. As the railroad company did not keep a switch engine at Reform, all carload shipments arriving there consigned to the Lathrop Company had to be placed on the spur track while the local freight train wag there. The spur track connected the plant of the Lathrop Company with the main line of the Mobile & Ohio Railroad at Reform. There was no railroad station or agent at Lathrop. The spur track belonged to and was on the land of the railroad company. All shipments billed to the Lathrop Company were placed on the spur track, and when the company accepted a shipment the bill of lading was surrendered and the freight paid to the railroad agent at Reform, and the shipment was then delivered.
 

 When this carload of rails arrived at Reform station, the car was set out on the spur track, according to
 
 custom,
 
 and the Lathrop Company was immediately notified by the railroad agent at Reform by telephone. On the next day, or perhaps two days after the car arrived, the Lathrop Company declined to accept the rails, because, from a casual inspection of them in the car, it appeared that some of the rails were surface bent and therefore not of the kind ordered. There .was a car shortage at the time, and the Lathrop Company was anxious to use this gondola car to ship out lumber. For that reason, and believing that an adjustment would be had with the Morley Company, the Lathrop Company got permission from the railroad agent at Reform to unload the car and place the rails on the right of way of the railroad company, near the Lathrop Company’s mill. The car was unloaded by employees of the Lathrop Company, with the understanding that they were serving the railroad company and were not accepting the rails. They remained there, piled on the railroad right of way, several weeks, until it became unlikely that a settlement would be had between the Lathrop Company and the Morley Company with regard to the defective rails. The rails were then loaded upon another car of the railroad company and transferred to a place about 100 yards from Reform station, where they remained until July, 1919, when they were shipped to Mobile, Ala., by the railroad company and sold for charges, according to the laws of Alabama.
 

 Meanwhile the Lathrop Company had in-. formed the Birmingham Trust & Savings Bank, and the broker representing the Morley Company, of the condition of the rails, and had endeavored to bring about a settlement. There was no settlement of the matter; and, on the 11th of June, 1918, the Southern Cypress Manufacturing Association, on behalf of the Morley Company, made demand upon the Texas & Pacific Railway Company to pay the draft, averring, that the shipment had been delivered by the railroad company to the Lathrop Company without surrender of the bill of lading.
 

 This suit was filed on the 16th of May, 1919, and’ ten days later, the railroad freight claim agent wrote to the Lathi'op Company and to the attorney for the Morley Company that, as the shipment was abandoned by the shipper, the railroad company would, on the 17th of June, 1919, according to the Alabama laws, ship the rails to Mobile and sell them at public auction, after proper advertisement, and that the parties would be advised later of the date of the sale. It was said in the freight agent’s letter that the purpose of giving the notice to both parties was that they could protect their interest by accepting the shipment and paying all charges before the sale. The rails were sold at public auction in Mobile on the 9th of August, 1919, for $1,-821.70. Thereupon the defendant in this suit filed a supplemental answer, claiming that the charges against' the shipment amounted to 83,478.69, and, giving credit for the pro
 
 *681
 
 ceeds of the sale, the defendant set up the reconventional demand for $2,156.99.
 

 Opinion.
 

 We agree with the district court that the rails were not delivered by the railroad company .to the Lathrop Company, but remained in the custody and under the control of the railroad company while they were on the spur track or right of way of the railroad company, between Reform and the plant of the Lathrop Company. In that respect the case presents only a question of fact, and the preponderance of the evidence is in favor’ of the defendant. We agree with the district court also in the conclusion that the railroad company did not become liable for allowing an inspection of the rails. We doubt that the printed clause in the bill of lading, forbidding inspection of the property, is applicable to a shipment that the shipper knows is open for inspection. Be that as it may, it is well settled that a carrier’s allowing a consignee or party to be notified to enter the car and inspect the shipment, in violation of such a stipulation in an order bill of lading, does not constitute a delivery of the shipment or conversion of the property, or render the carrier liable to the shipper, without proof that actual loss or damage resulted from the inspection. See Hines, Director General, v. Scott, 248 S. W. 663, 112 Tex. 506, and the decisions there collected.
 

 Our opinion, however, is that, the charges, amounting to $3,478.69, which the railroad company levied against the shipment, are excessive. The storage charge, according to the published tariff or rules, as applied to the weight of the shipment, amounted to $7.77 per day after 48 hours after the notice of arrival at destination. The defendant has included in his claim a charge of $7.77 per day from the 27th of May, 1918, until the rails were sold for the charges. It is true that the Lathrop Company, who, according to the bill of lading, was the party to be notified, was notified of the arrival of the shipment on or about the 25th of May, 1918, and the shipper also knew, about that time, that the shipment was at its destination; but the circumstances under which the shipment was then held by the railroad company, pending an adjustment between the shipper and the Lathrop Company, were such as to leave the inference that no such demurrage charge would be made. The evidence leaves no doubt in our mind that no such charge would have been made if the Lathrop Company had accepted the shipment at any time before this suit was filed, or if the shipper had given directions for reslbipment. Our opinion is that the charge of $7.77 should be calculated from the 26th of May, 1919, the date of the letter from the freight claim agent, to the 9th of August, 1919, the date of the sale of the shipment, making 75 days, or $582.75, to which should be added $12 for unloading and $25 for reloading at Reform, $351.30 for the freight bill from Reform to Mobile and $6.16, cost of advertising the sale, making a total charge of $977.21, and leaving the defendant indebted to the plaintiff for $344.49.
 

 The judgment appealed from is annulled, and it is now ordered, adjudged and decreed that the plaintiff recover of and from the defendant, Andrew W. Mellon, Director General of Railroads and Agent, the sum of $344.49 with legal interest from the 9th of August, 1919, and the costs of this suit.