## LANCASTER AND WALLACE, Receivers T. & P. RY., v. LOUISIANA CYPRESS LUMBER COMPANY

---

(June 6, 1927. Opinion and Decree.)
(July 14, 1927. Rehearing, Opinion and Decree.)
(October 6, 1927. Writ of Certiorari and Review Denied by Supreme Court.)

---

*(Syllabus by the Court)* .

1. **Louisiana Digest—Carriers of Passengers and Goods—Par. 154.**
When unaccepted shipment is sold by the carrier under Act 124 of 1890, as amended by Act 172 of 1916, demurrage can be claimed for only seventy days from date of arrival.

Appeal from the Twenty-fourth Judicial District Court for the Parish of Jefferson. Hon. L. Robert Rivarde, Judge.

Action by J. L. Lancaster and Charles L. Wallace, Receivers of the Texas and Pacific Railway Company, plaintiffs and appellees, against Louisiana Cypress Lumber Co., defendant and appellant.

There was judgment for plaintiffs and defendant appealed.

Judgment amended.

Spencer, Gidiere, Phelps and Dunbar, of New Orleans, attorneys for plaintiff, appellee.

Dart and Dart, L. C. Guidry, of New Orleans, attorneys for defendant, appellant.

JONES, J. In this suit plaintiff seeks to recover Five Hundred Forty-five and 69/100 ($545.69) Dollars, demurrage due on a carload of lumber shipped over plaintiffs' lines from the mill of defendant at Harvey,

Louisiana, to the Lafourche Levee Board at Magnolia Switch, Louisiana, which car was refused by the consignee.

Plaintiffs' material allegations are as follows:

(1) Car was shipped on May 24, 1920, on bill of lading issued by plaintiffs to defendant.

(2) Shipment was received on May 27, 1920, consignees were notified on May 28th, and car placed for unloading May 29th at seven a. m.

(3) Levee Board refused to accept the shipment and shipper was immediately notified, but failed to give instructions as to disposition of car in spite of repeated efforts.

(4) Car remained on hand until October 30th, when it was sold by plaintiff in accordance with Act 124 of 1890, as amended by Act 172 of 1916.

(5) Demurrage began to run on the car forty-eight hours after placement at rate of Two Dollars per day for first four days and Five Dollars per day thereafter.

(6) The total demurrage and car tax was Six Hundred Forty-one and 69/100 Dollars _____$641.69

The proceeds of sale were Ninety-six Dollars _____ 96.00

$545.69

In its original answer defendant admitted the shipment, but denied indebtedness and in a supplemental answer defendant admitted that it had been notified on June 16th that the car had been refused and it had replied that price had been paid and it had no further interest.

Defendant then averred that plaintiffs were estopped by their negligence from claiming damages for two reasons:

(1) Because plaintiffs had been guilty of negligence in not unloading and selling the lumber promptly and thus minimizing the damages.

(2) Because there were four Magnolia Switches in Louisiana and plaintiffs were negligent in sending car to the wrong place without demanding more specific instructions.

There was judgment for plaintiff and defendant has appealed.

There is no dispute about the following facts.

On May 24, 1920, defendant delivered to plaintiffs a carload of lumber. Defendant itself prepared the bill of lading and submitted same to plaintiffs' agent at Harvey. This bill of lading specified as the destination of the shipment "Magnolia Switch, La.", and gave the route as "T. & P. R. R." The only instructions that plaintiffs' agent had as to the destination of the shipment was the insertion in the bill of lading of the destination as "Magnolia Switch, State of Louisiana," "Route T. & P. R. R." It was admitted at the trial of the case in the District Court that there are in Louisiana four stations known as "Magnolia"; one on the line of the Texas & Pacific Railway in Assumption parish, one on the line of the Southern Pacific in Terrebonne parish, one on the line of the New Orleans & Lower Coast Railroad in Plaquemines, and one on the line of the Louisiana Southern in St. Bernard parish, all of which are prepay stations. This shipment was intended for the "Magnolia" on the line of the New Orleans & Lower Coast Railway but nothing was said to plaintiff's agent in this regard. The only instructions the agent had were those shown on the bill of lading made out by defendant itself where the destination was given as "Magnolia Switch, State of Louisiana," and the route, "T. & P. R. R." Plaintiffs' agent assumed that the shipment was intended for the station known as "Magnolia" on the line of the Texas & Pacific Railway. The shipment was accordingly forwarded and arrived at this destination on May 27, 1920; the consignee,

Lafourche Levee Board, was notified by plaintiffs on May 28, 1920, and the shipment was placed for unloading on or before 7 a. m. on May 29, 1920; the Lafourche Levee Board refused, however, to accept the shipment and failed to give instructions to plaintiffs for its disposition. On June 16, 1920, plaintiffs notified defendant that the shipment had been refused by the consignee. Defendant failed to give instructions for the disposition of the shipment, taking the position that the lumber belonged to the consignee and that it "had nothing further to do with it".

The shipment remained on hand undisposed of until October 30, 1920, when, in compliance with the provision of Act 124 of 1890, as amended and re-enacted by Act 172 of 1916, it was sold by plaintiffs to pay charges. The proceeds of the sale amounted to One Hundred ($100.00) Dollars (plaintiff p. 3), from which plaintiffs deducted Four ($4.00) Dollars for the advertisement pertaining to the sale and credited defendant with the sum of Ninety-six ($96.00) Dollars.

It is admitted that as to the defendant, the shipper, demurrage cannot be assessed for the period prior to the notice to defendant that the shipment had been refused.

Defendant's argument that plaintiffs were negligent in forwarding the shipment without securing further information from defendant as to its proper destination, is not sound. Defendant itself made out the bill of lading. In this bill of lading the destination of the shipment is described as "Magnolia Switch, State of Louisiana," and the route is specified as "T. & P. R. R." The only instructions the agent had were those shown on the bill of lading. On the faith of these facts alone the agent was justified in assuming that the shipment was intended for the station known as "Magnolia" on the line of the Texas & Pacific Railway. If the shipment had been intended for the "Magnolia" on the line of the New Orleans & Lower Coast Railway it would have been handled on a "Track receipt," the form of which was offered in evidence and is part of the record herein. This document is an entirely different sort of document from a bill of lading. Mr. Vaught, defendant's agent, testified that defendant was accustomed to make many shipments out of Harvey and that plaintiffs had no through rates from Harvey to the "Magnolia" on the line of the New Orleans & Lower Coast Railway in Plaquemines.

Plaintiffs' agent was, therefore, justified in assuming that, had defendant intended the shipment for the station in Plaquemines parish on the line of the New Orleans & Lower Coast Railway, it would have taken out the proper "track receipt" instead of tendering a completed Texas & Pacific bill of lading form.

In answer to the other defense that plaintiffs are estopped by their failure to unload and sell the lumber, plaintiffs quote the following provision of the bill of lading:

"Property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given, may be kept in car, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse at the cost of the owner and there held at the owner's risk and without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage."

Under this provision plaintiffs had the right to leave the lumber in the car until it was sold.

Plaintiffs argue that the defendant had the burden of proving that damages could

have been minimized and that the record is bare of any proof on that point.

We do not think this contention sound because the Supreme Court in the case of Mutual Rice Co. vs. Star Bottling Works, 163 La. 159, 111 South. 663, held that the burden of proof, in a case where the buyer has breached a contract for the sale of sugar, is upon the seller not only to prove his loss but to show that it could not have been avoided or lessened by ordinary care on his part.

Applying this decision here we think that plaintiffs have failed to show that the loss could not have been lessened by ordinary care for the following reasons: The controlling statute provides that unclaimed property may be sold by the carrier sixty days after the arrival and after ten days advertisement. Assuming that these perils do not run concurrently, though the statute is not clear, on that point, as the car arrived on May 28th, it could legally have been sold seventy clear days later, that is August 7th.

Had this been done, as demurrage according to the agreed facts, could not run against defendant, until it had received notice of consignee's refusal to take the property, which notice was given on June 16th, and then at the rate of Two ($2.00) Dollars per day for the first four days and Five ($5.00) Dollars per day thereafter, we find that defendant owed demurrage amounting to Two Hundred Forty-eight ($248.00) Dollars, as follows:

June 17, 18, 19 and 20 at $2.00 per day _____$   8.00
Remaining 10 days in June, 31 in July and in August, altogether 48 days, at $5.00 per day_____ 240.00

Total demurrage _____$248.00

As the proceeds of the car were Ninety-six ($96.00) Dollars, the balance due is One Hundred Fifty-two ($152.00) Dollars.

Defendant refers us to the case of Morley Cypress Lumber Co. vs. Hines, 160 La. 676, 107 So. 487, where the Supreme Court reversed the judgment of the lower court and allowed storage only from the time the railroad notified the consignor that the property would be sold, to the date of sale.

We do not think that decision controlling here because the facts differ greatly. In that case as the rails were unloaded promptly and the car returned to use, there was no charge for demurrage. Furthermore, there was an understanding between the consignee and the carrier that the rails should be unloaded, pending a possible compromise between the parties interested. Here there was no understanding between the parties and no unloading.

It is true that the carrier in this case did not notify the consignor and the consignee until October 14th that they intended to sell the lumber on October 30th, but it had notified the shipper on June 16th of the consignee's refusal to accept delivery and under the Louisiana statute this was the limit of the carrier's authority, as the Louisiana statute, the sole source of the carrier's right to sell, did not permit sale until sixty days after arrival.

For above reasons the judgment is amended and it is now ordered, adjudged and decreed that there be judgment for plaintiffs, J. L. Lancaster and Charles L. Wallace, Receivers of the Texas & Pacific Railway Co., and against the defendant, Louisiana Cypress Lumber Company, in the sum of One Hundred and Fifty-two ($152.00) Dollars, with legal interest from judicial demand, costs of this appeal to be paid by appellee.

## ON PETITION FOR REHEARING

In computing the amount of demurrage, it was overlooked that the tariff provides for the exclusion of Sundays and holidays.

(Sec. 3.) There should have been excluded June 20th and 27th, July 4, 5, 11, 18, 25, and August 1st. As July 4th fell on a Sunday, Monday, July 5th, should be excluded. This makes a difference of eight days, or $40.00.

It is therefore ordered that the original judgment be reduced from $152.00 to $112.00.